Appellant=s Motion for Rehearing Overruled; State=s Motion for Rehearing
Granted; Opinion of February 20, 2003 Withdrawn; Affi









 

Appellant=s
Motion for Rehearing Overruled; State=s
Motion for Rehearing Granted; Opinion of February 20, 2003 Withdrawn; Affirmed
and Corrected Opinion filed May 1, 2003.

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01019-CR

NO.
14-01-01020-CR

____________

 

EX PARTE THEOPHILUS DEBOER TARLTON

 



 

On
Appeal from the County Criminal Court at Law No. 3

Harris County, Texas

Trial
Court Cause Nos. 1081486 & 1081829

 



 

C
O R R E C T E D   O P I N I O N

Appellant=s
motion for rehearing is overruled.  The
State=s
motion for rehearing is granted.  Our
opinion of February 20, 2003 is withdrawn and the following corrected opinion
is issued.

Appellant,
Theophilus Deboer Tarlton, appeals the denial of his application for pretrial
writ of habeas corpus on the grounds that the prosecution is barred by double
jeopardy and collateral estoppel.  We
affirm.








Background

In
November 1998, a community service inspector with the City of Houston told
appellant that he needed to remove leaking oil barrels and inoperable motor
vehicles from his property at 8217 Braniff. 
On February 6, 1999, Officer R.F. Nino, of the Houston Police Department,
discovered a dark substance leaking out of two large oil drums in a moving lane
of traffic near appellant=s home.  He observed oil
spilling onto the road, on the land, and into the drainage ditch.  He traced the trail of oil to the house at
8217 Braniff. 

On
February 8, 1999, Steven Brown discovered three to five barrels of oil leaking
onto the property of Valve Sales Company at 8820 Meldrum, which was located a
few blocks from 8217 Braniff.  Brown
called the Houston Fire Department hazardous waste team, who investigated the
spill on Braniff and on Meldrum.  Russell
Harris, a member of the hazardous waste team, investigated the scene at 8820
Meldrum and testified that someone in a vehicle had driven to the location and
dumped oil barrels.  Harris then called
Officer S.R. Dicker, of the Houston Police Department Major Offenders
Environmental Investigation Unit.  Officer
Dicker traced the trail of oil from 8820 Meldrum to appellant=s
property.

Appellant
was charged by indictment with two counts of the felony offense of disposal of
used oil and one count of the felony offense of disposal of hazardous
waste.  Tex.
Water Code Ann. ' 7.176(a)(2) & ' 7.162(a)(2) (Vernon 2000). 
Appellant waived his right to a jury and entered a plea of not
guilty.  At the conclusion of the State=s
case in chief, the trial court directed a verdict of not guilty in favor of
appellant on each indictment.[1]  The State has now charged appellant by
information with two counts of the misdemeanor offense of water pollution.  Tex.
Water Code Ann. ' 7.147(a) (Vernon 2000). 
Appellant filed an application for writ of habeas corpus and a special
plea in double jeopardy in the trial court alleging the second prosecution is
barred by double jeopardy and collateral estoppel.  The trial court denied appellant=s
application.








Standard
of Review

In
reviewing a decision to grant or deny relief on a writ of habeas corpus, we
afford almost total deference to the trial judge=s determination of historical facts supported by the record,
especially when the fact findings are based on an evaluation of credibility and
demeanor.  See Ex parte Martin, 6 S.W.3d
524, 526 (Tex. Crim.
App. 1999). 
We afford the same amount of deference to the trial judge=s
rulings on applications of law to fact questions if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor.  Id. at 526.  If the resolution of those ultimate questions
turns on an application of legal standards, however, we review the
determination de novo.  Id.

Double
Jeopardy

In
his first point of error, appellant contends the trial court erred by refusing
to dismiss the two misdemeanor informations. 
Appellant contends he is the subject of a second prosecution for the
same offense in violation of the double jeopardy clause of the Fifth Amendment
to the United States Constitution.  

Appellant
argues that the instant water pollution charges arise from the same facts and
same transactions as the disposal of used oil and hazardous waste cases, which
were considered by the trial court and resolved by acquittals.  Accordingly, appellant concludes he will
effectively be retried on the disposal offenses if we refuse to grant habeas
relief from prosecution of the water pollution charges. 








The
double jeopardy clause of the United States Constitution provides no person
shall be Asubject for the same offence to be twice put in jeopardy of
life or limb.@  U.S. Const. amend. V.  This protection applies to (1) a second
prosecution for the same offense after acquittal; (2) a second prosecution for
the same offense after conviction; and (3) multiple punishments for the same
offense.  Brown v. Ohio, 432 U.S.
161, 164B65
(1977).  In determining whether the
double jeopardy clause has been violated, we ordinarily apply the Blockburger
test.  Blockburger v. United States,
284 U.S. 299, 304 (1933).  The Blockburger
test states, Athat, where the same act or transaction constitutes a violation
of two distinct statutory provisions, the test to be applied to determine
whether there are two offenses or only one is whether each provision requires
proof of an additional fact which the other does not.@  Id. 
If the same act violates alternative provisions of both statutes,
jeopardy bars successive prosecution.  United States v. Dixon, 509 U.S.
688, 696 (1993).  The same elements test
under Dixon requires more than a comparison of statutory elements;
rather, the essential elements relevant to a jeopardy inquiry are those of the
charging instrument, not of the penal statute.  See Parrish v. State, 869 S.W.2d
352, 354B55
(Tex. Crim. App. 1994).

The
informations for the current water pollution charges contain the following
allegations:

1.         Cause
number 1042142: A[Appellant,] on
or about FEBRUARY 6, 1999, did then and there unlawfully[] discharge or allow
the discharge of a waste or pollutant, namely other waste, namely oil, and/or
used oil and/or a petroleum hydrocarbon substance, into water in the State,
namely a drainage ditch located near 8300 Braniff, that caused or threatened to
cause water pollution, said discharge not being in strict compliance with a
required permit or with a valid and currently effective order issued or rule
adopted by the appropriate agency, namely, the Texas Natural Resource
Conservation Commission.@

2.         Cause
number 1042143: A[Appellant,] on
or about FEBRUARY 8, 1999, did then and there unlawfully[] discharge or allow
the discharge of a waste or pollutant, namely other waste, namely oil, and/or
used oil and/or a petroleum hydrocarbon substance, into water in the State,
namely a drainage ditch located near 8820 Meldrum, that caused or threatened to
cause water pollution, said discharge not being in strict compliance with a
required permit or with a valid and currently effective order issued or rule
adopted by the appropriate regulatory agency, namely, the Texas Natural
Resource Conservation Commission.@

The
indictments for disposal of used oil and hazardous waste charges were stated as
follows:

1.         Cause
number 840183: A[Appellant,] on
or about FEBRUARY 8, 1999, did then and there unlawfully, knowingly dispose of
used oil on land located near 8820 Meldrum.@








2.         Cause
number 840185: A[Appellant,] on
or about FEBRUARY 6, 1999, did then and there unlawfully, knowingly dispose of
used oil on land located near 8300 Braniff.@

3.         Cause
number 840186: A[Appellant,] on
or about FEBRUARY 8, 1999, did then and there unlawfully, intentionally and
knowingly DISPOSE OF and cause to be DISPOSED OF, a hazardous waste, namely, A
SOLID WASTE EXHIBITING THE TOXICITY CHARACTERISTIC FOR LEAD, without all
permits required by the appropriate regulatory agency, namely, the Texas
Natural Resource Conservation Commission.@


The
felony disposal of used oil indictments include an allegation that the disposal
of used oil was on land, and the felony disposal of hazardous waste
indictment includes an allegation that the disposal of hazardous waste occurred
on land.  This element C
disposal on land C is missing from the misdemeanor water pollution
informations.  Similarly, the misdemeanor
water pollution informations allege a discharge of used oil in water,
which caused or threatened to cause water pollution.  The discharge in water and the water
pollution, or threat of water pollution, is missing from the felony disposal of
used oil and hazardous waste indictments. 
Moreover, the felony disposal of used oil and disposal of hazardous
waste indictments include an allegation that appellant knowingly engaged in the
prohibited acts.  This culpability
requirement is missing from the misdemeanor water pollution informations, which
merely include an allegation that the discharge of used oil was done
unlawfully. 








Appellant
contends that water pollution is a lesser included offense of disposal of oil
or hazardous waste on land because the only distinction between the two
offenses is that water pollution does not require the State to prove a culpable
mental state.  An offense is a lesser offense
if Ait
is established by proof of the same or less than all of the facts required to
establish the commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art.
37.09(1) (Vernon 1981).  While the double
jeopardy clause bars prosecution of any offense which, according to Texas law,
includes or is included within an offense for which the defendant has been
acquitted, the offense of water pollution is not a lesser included offense of
disposal of oil or hazardous waste.  See Parrish, 869 S.W.2d
at 355.  Not only do the offenses differ
in the requirement of culpability, but water pollution requires proof that the
substance was introduced into the water and caused water pollution.  Disposal of oil requires proof that the
substance was discharged
onto land.  Because the two offenses
contain different elements, appellant has failed to show he is now being
prosecuted for a lesser included offense.  Each offense requires proof of an element that
the other does not; therefore, appellant=s jeopardy rights have not been violated.  Appellant=s first point of error is overruled.

Collateral
Estoppel

In
his second point of error, appellant contends the trial court erred in refusing
to dismiss the misdemeanor water pollution informations.  Appellant argues that, because he was
previously acquitted for the felony offense of disposal of used oil and
acquitted for the felony offense of disposal of hazardous waste, further
prosecution for water pollution is barred by the doctrine of collateral
estoppel.

The
Fifth Amendment guaranty against double jeopardy encompasses collateral
estoppel.  Ladner v. State, 780
S.W.2d 247, 250 (Tex. Crim. App. 1989). 
When an issue of ultimate fact has once been determined by a valid and
final judgment, that issue cannot again be litigated between the same parties.  Ashe v. Swenson, 397 U.S. 436, 443
(1970).  This necessitates two
inquiries.  A>First, what facts were necessarily determined in the first
lawsuit?  Second, has the prosecution in
a subsequent trial tried to relitigate facts necessarily established in the
first trial?=@  Dedrick v. State, 623 S.W.2d 332, 336
(Tex. Crim. App. 1981) (quoting United States v. Mock, 604 F.2d 341, 343
(5th Cir. 1979)) (citations omitted).  It
is, of course, necessary to consider whether the issue in the second trial is
actually the same as the issue decided in the earlier criminal case.  Wayne
R. Lafave & Jerold H. Israel, 2 Criminal Procedure, ' 17.4
at 381 (1984).








Proper
application of the collateral estoppel rule requires the reviewing court to
examine the entire record of prior proceedings to determine what issue or
issues were foreclosed.  Ashe, 397
U.S. at 443; State v. Nash, 817 S.W.2d 837, 840 (Tex. App.CAmarillo
1991, pet. ref=d).  The test is whether
the verdict was necessarily grounded upon an issue which the defendant seeks to
foreclose from litigation, not whether there is a possibility that some
ultimate fact has been determined adversely to the State.  Nash, 817 S.W.2d at 840; see Ex parte
Lane, 806 S.W.2d 336, 338 (Tex. App.CFort Worth 1991, no pet.). 
A[T]he
scope of the facts that were actually litigated determines the scope of the
factual finding covered by collateral estoppel.@  Ex parte Taylor,
2002 WL 31466434, at *5 (Tex. Crim. App. November 6, 2002) (not yet reported).  Collateral estoppel precludes a subsequent
prosecution only if the matters to be relitigated dictated the previous
acquittal, and the fact finder could not rationally have based its verdict on
an issue other than the issue the defendant seeks to foreclose.  Nash, 817 S.W.2d at 840B41;
see also Wright v. Whitley, 11 F.3d 542, 545 (5th Cir. 1994).

At
trial, Gracie Lopez, a community service inspector with the City of Houston,
testified she told appellant in mid-November 1998, that he needed to move the
oil barrels and inoperable vehicles from his property.  On cross-examination, Lopez testified that
although she spoke with appellant, when she checked the ownership of the home,
the owner was listed as Benjamin Tarlton.

Officer
R.F. Nino of the Houston Police Department testified that, on
February 6, 1999, while on patrol, he saw two fifty-five gallon drums
and a dark substance in a moving lane of traffic near 8300 Braniff in Houston,
Texas.  He determined the substance was
an oily, grainy-type material.  A trail
of oil was seeping from the drums and Officer Nino followed the trail of oil
across the property to the driveway at appellant=s home at 8217 Braniff. 
Officer Nino declined to speculate whether the oil spill was accidental
or intentional.








Steven
Patrick Brown is a former vice-president of Valve Sales Company, located at
8820 Meldrum, near appellant=s home.  On February 8,
1999, Brown drove onto the property at 8820 Meldrum and discovered three to
five barrels of oil leaking.  The barrels
did not belong to Valve Sales Company, and Brown testified that whoever dumped
the oil had to have entered through a broken gate.

Russell
Harris of the Houston Fire Department hazardous materials team testified that
he investigated both locations where leaking oil barrels were found.  His investigation led to the conclusion that
someone in a vehicle had driven to the locations and dumped the oil
barrels.  A distinct oil trail led to
8217 Braniff.  Harris called Officer S.R.
Dicker of the Houston Police Department major offenders environmental
investigation unit.  He testified that at
the Braniff location, two drums had dropped off the road and into the adjacent
ditch. Puddles of oil were on the property. 
A station wagon, which was registered to appellant, was parked near two
drums leaking oil.  Those drums had holes
punched in the bottom of them with a puncture tool found near the drums.  The tool and its handle were oily.  The station wagon=s
tires had oil on them, indicating the vehicle had been driven through the
oil.  Officer Dicker testified that
several oil barrels were on the property at 8217 Braniff and were tipped over,
leaking oil.

Officer
Dicker was also called to the location at 8820 Meldrum.  He testified that he followed the oil trail
from 8820 Meldrum to appellant=s property.  This trail
led to the same location as the trail he investigated from the Braniff
location.  The two trails were separate
in that the trail investigated on February 6, 1999, was in the middle of the
road and the trail investigated on February 8, 1999, was on the right side of
the road.  It appeared to Officer Dicker
that the February 8 trail went from appellant=s property to 8820 Meldrum.

Ted
Agon testified that he lived next door to the property at 8217 Braniff and that
appellant lived at that address.








At
the conclusion of the State=s case-in-chief, appellant moved for a directed verdict on the
grounds that the State did not connect appellant with the property where the
oil was dumped and there was no evidence that appellant intentionally and
knowingly dumped the oil.  The State
responded, stating that appellant was linked to the property through the
testimony of Lopez, Agon, and the certified copy showing the station wagon was
registered to appellant.  The State
further responded that the evidence that Lopez had warned appellant about the
leaking oil and the oil trails leading to his home were sufficient evidence to
show intent.  The trial judge granted
appellant=s motion without stating a reason.

Appellant argues that the following issues of ultimate fact
were decided by the trial court: (1) appellant did not unlawfully, knowingly
dispose of used oil on land located near 8300 Braniff on February 6, 2000; (2)
appellant did not unlawfully, knowingly dispose of used oil on land located
near 8820 Meldrum; and (3) appellant did not dispose of hazardous waste on land
located near 8820 Meldrum on February 8, 1999. 
Appellant further argues that the court, by directed verdicts of not
guilty, also found as an issue of ultimate fact that (1) he was not the perpetrator
of the alleged offense or even at the scene of either incident at the time of
the alleged illegal dumping of the used oil or hazardous waste; (2) he was not
a party to the alleged offense; and (3) there were insufficient affirmative
links between any used oil discovered at 8217 Braniff and the alleged disposal
of used oil on land located near 8300 Braniff on February 6, 2000, or the
disposal of used oil on land located near 8820 Meldrum.








In
moving for a directed verdict, appellant contended the State did not connect
appellant with the property where the oil was dumped and there was no evidence
that appellant intentionally and knowingly deposited the oil.  In directing a verdict of not guilty, the
court did not specify its reasons.  If
the trial court had specifically found that appellant was not sufficiently
connected to the dumped oil, collateral estoppel would bar a subsequent
prosecution.  The trial court, however,
could have based its decision on the lack of intent or any other basis.  Under the current informations, the State
must prove that appellant polluted water by dumping a hazardous substance in a
drainage ditch, but need not prove intent. Because the trial court could
rationally have based its verdict on issues other than those appellant now
seeks to foreclose, we cannot find that the instant prosecutions violate the
collateral estoppel rule.  See Nash,
817 S.W.2d at 840B41.  Therefore, the
acquittal in the first trial does not estop the State from trying appellant
under the pending informations. Appellant=s second point of error is overruled.

The
judgment of the trial court is affirmed.

 

 

 

/s/        Charles
W. Seymore

Justice

 

 

Judgment rendered
and Corrected Opinion filed May 1, 2003.

Panel consists of
Justices Yates, Seymore, and Guzman.

Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Appellant was
charged with a fourth felony, not the subject of this appeal.  Appellant was convicted and appealed to this
court in a separate cause number.